## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| JUSTIN TRUDEAU, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.  4:19-CV-00723-RWS |
| v. | § § | |
| UNIVERSITY OF NORTH TEXAS, BY AND THROUGH ITS BOARD OF REGENTS, et al., | § § § § | |
| Defendants. | § § § | |

## <u>ORDER</u>

Before the Court is Defendants University of North Texas ("UNT"), Eve Bell, Brian Richardson and Christina Brodie's (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (Docket No. 24).  For the following reasons, the motion is **GRANTED**.

## BACKGROUND

This dispute arises from an investigation of and a resultant disciplinary action against Plaintiff Justin Trudeau, a tenured UNT professor, for violations of the school's sexual and disability harassment policies.  At this stage, the Court sets forth the facts alleged in the First Amended Complaint in the light most favorable to Trudeau, accepting all well-pleaded facts as true.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  But the Court need not presume that Trudeau's legal conclusions are correct.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Trudeau has taught at UNT since 2005 and been tenured since 2012.  Docket No. 18 ¶ 6.01. He teaches performance art-related classes to undergraduate and graduate students.  *Id.*  During the Fall 2017 semester, Trudeau taught a graduate class entitled "Seminar in Adaptation and

Staging." *Id.* ¶ 6.02.  As part of the class, Trudeau assigned the book *A Director Prepares* by Ann

Bogart.  *Id.* ¶ 6.03.  The book's third chapter discusses "eroticism" as a "potential partner and

potential obstacle to art-making." *Id.*  Class assignments included student-picked thematic projects

related to the readings, which required Trudeau to discuss the subjects in the book, including

eroticism. *Id.*

At the end of the semester, upon receiving class "SPOT" evaluations, Trudeau learned of

certain students' claims about his class.  *Id.* ¶ 6.04.  He took these matters to Defendant Brian

Richardson, chair of Trudeau's department, Communication Studies. *Id.*  In January 2018, UNT's

Office of Equal Opportunity notified Trudeau of an investigation into the claims. *Id.*  Defendant

Christina Brodie, Assistant Director of Equal Opportunity, Institutional Equity and Diversity, led

the investigation. *Id.*  Students alleged that, during class, Trudeau had:

1.   commented that certain student performances were "hot" and "erotic";

2.   made a sexual comment in reference to Student 3 and provided her with "sexualized
     feedback during a performance";

3.   offered Student 2 an "A" in the class "if she convinced other students to perform in
     a sexual manner on stage, and questioned the pregnancy status of other students in
     the class";

4.   referenced Student 2's breasts;

5.   commented on Student 1's performance attire; and

6.   referred to Student 2 "as a psychopath" knowing of her mental health condition.[1]

*Id.* ¶ 6.05.  On January 18, 2018, Trudeau met with Brodie to discuss the allegations, and he

responded to the allegations in writing a week later.  *Id.* ¶¶ 6.04, 6.07.  On both occasions, Trudeau

presented evidence contradicting the allegations.  *Id.* ¶ 6.15.  The evidence included a list of

potential witnesses (every student in the class), a SPOT evaluation falsely claiming that he had

---

[1] This last allegation was not included in the original notification letter Trudeau received or even presented to Trudeau
before the final decision.  Docket No. 18 ¶ 6.28.  He thus was never able to respond to that allegation. *Id.*

had "discussions about the personal sex lives of students" and a report of a student bad-mouthing him in a local bar. *Id.* ¶¶ 6.15–6.16. Trudeau told Brodie that, before this, he had never heard of a student's malicious behavior toward him. *Id.* ¶ 6.16.

Trudeau received a letter reporting the results of the investigation on May 30, 2018. *Id.* ¶¶ 6.09, 6.28. Despite significantly changing the nature of the allegations against Trudeau,[2] the report found that evidence substantiated allegations 1–3 and 6 but not 4 or 5. *Id.* ¶¶ 6.06, 6.28. The report concluded that Trudeau's comments had violated UNT policies, noting that they

> were unwelcome because they embarrassed the students, and caused them to be quiet in class, they were unrelated to the course materials, substantially interfered with the students' academic performance because they rarely participated in class discussions and performances as they were scared of what inappropriate comment or statement of a sexual nature that Plaintiff would say to them individually or collectively.

*Id.* This analysis contradicted the SPOT evaluations, which had complained that students had to participate too much in the class. *Id.* Because Trudeau had no opportunity to respond to the sixth allegation, the final decision failed to account for several factors showing that Trudeau had not been aware of the student's mental health condition. For example, he had not received a UNT standard notification letter from the Office of Disability Access, nor had any student brought the condition to his attention. *Id* ¶ 6.30. Nonetheless, Defendant Eve Bell (Brodie's supervisor) informed Trudeau that "the statements of fact made in the report (e.g., your awareness of a student's bipolar disorder) are supported by the record in this case," a copy of which Trudeau never received. *Id.* ¶¶ 6.29–6.30. Indeed, Trudeau never received any of the evidence against him, as required by UNT policies. *Id.* ¶ 6.36.

---

[2] Specifically, the charges against Trudeau were worded materially differently on three separate occasions: when originally presented to Trudeau, when provided to the Dean and to Richardson, and in the final decision letter. Docket No. 18 ¶ 6.28. Specific dates in the original letter disappeared after Trudeau pointed out that his class did not meet on those dates. *Id.* And, as previously discussed, the sixth allegation was added to the decision letter even though it was never presented to Trudeau. *Id.*

The final decision stated that Trudeau had created an "intimidating and offensive educational environment for his students." *Id.* The report concluded that Trudeau had violated UNT's sexual and disability harassment policies. *Id.* ¶ 6.31. As punishment, Trudeau received no merit raise and was ruled ineligible for summer teaching. *Id.* The report made no mention of the evidence Trudeau had presented in his defense. *Id.* ¶ 6.15. The punishment was based, in part, on the fact that Trudeau had received sexual harassment training and "should have known better," but Trudeau had never received any training or been requested to participate. *Id.* ¶ 6.36.

Trudeau sought to appeal both the decision and the punishment. *Id.* ¶ 6.07, 6.31. In June, he received an email from Brodie informing him that OEO investigations are unappealable. *Id.* ¶ 6.07. This contradicted UNT Policy 16.006, which stated that "[f]aculty may appeal findings and/or sanctions to the University Review Committee." *Id.* When Trudeau brought this issue to Bell's attention, she responded in an email:

> UNT Policy 16.006, while still available in the UNT Policy Manual, is no longer in use by the University. As you will note, the now-defunct version of 16.006 that is published in the Manual states that appeals will be governed by Policy 15.1.4, which no longer exists. I fully recognize how frustrating it is to rely on a University policy and be told that it is inoperative; however, that is the case in this instance. Your concerns regarding OEO's failure to notify you of this fact have been noted.

*Id.* ¶ 6.08.

UNT policy requires reasonable justification for extending an investigation beyond 45 days. *Id.* ¶ 16.09. The decision letter, which came five months after the notification letter, did not include this official justification, so Trudeau emailed Brodie requesting one. *Id.* Brodie replied:

> Often times investigations will go over 45 days for various reasons. However, there was a significant amount of information to review in your investigation; therefore I wanted to make sure that I throughly (sic) reviewed all information and interviews prior to the completion of the investigation. I do apologize for the delay; however as stated above I wanted to throughly (sic) review all information that was provided to our office.

*Id.* ¶ 6.10.  Bell concurred with Brodie's explanation and added that "OEO's investigators have carried a particularly heavy case load this year due to increased reporting of alleged discrimination and harassment from students, faculty and staff."  *Id.* ¶ 6.11.

> Brodie also addressed the report's failure to mention Trudeau's evidence.  She stated that
>
> Dean Cobb informed me that you inquired about the anonymous comment on your SPOT evaluation alleging that you engaged in conversation with students about their personal sex lives.  This comment was not raised as an allegation in this investigation.  The notice of complaint I provided you on January 18, 2018 captured the allegations my office investigated.  I was also informed that you inquired about students making concerning comments about you.  We discussed this issue in our January 18 meeting.  At that time, I informed you that you could file a separate complaint with OEO if you believed those comments pertained to your protected status, but you declined to do so.

*Id.* ¶ 6.17.  Trudeau disputed this recollection of the January meeting, responding that he "would not have mentioned the instance in [his] letter on January 25th if [he] believed [Brodie was] not investigating the evidence [he] presented to [her] both orally and in writing."  *Id.* ¶ 6.18.  He requested that the matter be investigated and inquired how to proceed.  *Id.*  Ms. Brodie replied

> As I stated in our meeting on January 18, 2018 you may file [a] complaint with our office regarding the concerning comments you believe students made about you.  I will have our administrative assistant Rebbecca Dobrin send you an inquiry form to fill out and return to our office.  Additionally, please provide OEO with any information that pertains to your concerns.  I have cc'd Rebbecca on this email.

*Id.* ¶ 6.19.  The form Trudeau received, however, pertained to UNT's non-discrimination policy and was not relevant to a "protected status."  *Id.*

In early July, Richardson sent Trudeau a letter setting out the punishments for Trudeau's violations.  *Id.* ¶ 6.24.  However, in violation of UNT policy, Trudeau had not had an opportunity to respond orally or in writing, and the dean's office had Richardson pull the letter.  *Id.*  An associate dean told Trudeau to "pretend the letter doesn't exist."  *Id.*

Trudeau met with Richardson shortly after.  *Id.* ¶ 6.22.  In that meeting, he learned that the details of his investigation had not remained confidential, as required by UNT policy; rather, his

entire department was aware of the allegations.  *Id.* ¶¶ 6.21–6.22.  Richardson had also consulted with another faculty member on the appropriate punishment to impose because that faculty member was "just another straight white male" like Trudeau.  *Id.* ¶ 6.23.  This conversation also violated UNT policy, which prohibits discussing investigations during the resolution process.  *Id.*

Unable to appeal the final decision, Trudeau appealed the punishment.  *Id.* ¶ 6.31.  He was told that he could skip the appeal to the college and go straight to the University Grievance Committee ("UGC") to contest the entire decision.  *Id.* ¶ 6.32.  As the appeal progressed, however, Trudeau learned that the UGC could not overturn the decision and could only weigh in on the punishments levied.  *Id.* ¶ 6.33.  The UGC ruled in November 2018 that Trudeau had received an onerous financial penalty, effectively two years without merit pay, and recommended withdrawal of the denial of summer teaching sanction.  *Id.* ¶ 6.34.

Trudeau brings this action against UNT, against Bell and Brodie in their official and personal capacities, and against Richardson in his official capacity, alleging violations of (1) Title IX, (2) due process, (3) the First Amendment and (4) equal protection.  Defendants move to dismiss Trudeau's First Amended Complaint, asserting sovereign immunity, qualified immunity and that Trudeau has failed to state a claim upon which relief can be granted.  Docket No. 24.

## LEGAL STANDARDS

As a general rule, a district court should resolve a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure before a defendant's other challenges because the court must assure itself that it has subject matter jurisdiction before it can determine any other issues.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.  1994).  The party asserting jurisdiction (in this case, Trudeau) bears the burden of proving its existence.  *Id.*  A case is properly dismissed under Rule 12(b)(1) when the Court lacks the statutory or constitutional power to

adjudicate the case.  *CLEANCOALITION v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008).  In

deciding a Rule 12(b)(1) motion, a court may consider: "(1) the complaint alone; (2) the complaint

supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts."  *Robinson v. TCI/US West Comm'cns

Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts

are true and view those facts in the light most favorable to the plaintiff.  *Bowlby*, 681 F.3d at 219.

The Court may consider "the complaint, any documents attached to the complaint, and any

documents attached to the motion to dismiss that are central to the claim and referenced by the

complaint."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.

2010).  The Court must then decide whether those facts state a claim that is plausible on its face.

*Bowlby*, 681 F.3d at 219.  The complaint need not contain detailed factual allegations, but a

plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief.  *See

Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened

fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face."); *see also Iqbal*, 556 U.S. at 677–79 (discussing *Twombly* and applying *Twombly* generally

to civil actions pleaded under Rule 8).  "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendants' assertion of sovereign immunity presents a threshold issue that the Court

addresses first.  Concluding that sovereign immunity bars Trudeau's claims against UNT and

against Bell, Brodie and Richardson in their official capacities, the Court then addresses Trudeau's

Title IX claim, the only remaining claim against UNT.  Next, the Court considers whether Bell and Brodie are entitled to qualified immunity on Trudeau's remaining claims.  Because this analysis requires the Court to consider the substance of Trudeau's claims, the Court turns to Trudeau's constitutional claims in the order that they are presented in the First Amended Complaint.

## I.  Sovereign Immunity

Defendants first contend that Eleventh Amendment sovereign immunity bars Trudeau's constitutional law claims against UNT and against Bell, Brodie and Richardson in their official capacities.  Docket No. 24 at 4–5.  "Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."  *Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).  "Pursuant to the Eleventh Amendment, a state's sovereign immunity in federal court extends to private suits against state agencies, state departments, and other arms of the state."  *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268 (5th Cir. 2020).

UNT is an arm of the state, *Nat'l Sports & Spirits v. The Univ. of N. Texas*, 117 S.W.3d 76, 81 (Tex. App.—Ft. Worth 2003, reh'g. denied), and is entitled to sovereign immunity.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  This immunity extends to Bell, Brodie and Richardson in their official capacities unless an exception applies.  *Thomas v. James*, No. 5:14-cv-2, 2015 WL 4639733, at *6 (E.D. Tex. Aug. 4, 2015) (citing *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002)).  In addition, Texas has not waived sovereign immunity for claims under Section 1983.  *United States ex rel. Foulds v. Texas Tech Univ.*, 171 F.3d 279, 289 (5th Cir. 1999); *Jackson v. Texas S. Univ.*, 997 F.Supp.2d 613, 623 (S.D. Tex. 2014).

Trudeau does not contest UNT's immunity.  He does, however, argue that his § 1983 claims against Bell, Brodie and Richardson in their official capacities should proceed because he is seeking prospective injunctive relief.   Docket No. 28 at 4–5.   This exception to Eleventh Amendment immunity, announced in *Ex Parte Young*, 209 U.S. 123 (1908), requires a request for prospective injunctive relief against state officials who are committing an ongoing federal violation.  *See Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) To meet the exception, Trudeau must show "that [Bell, Brodie and Richardson are currently] violating federal law, not simply that [they have] done so."  *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).

Trudeau seeks an injunction prohibiting Defendants from "further implanting [sic] any remaining discipline and requiring that all references to the disciplinary decision be removed from [Trudeau]'s personnel file."   Docket No. 18 ¶¶ 27, 32.   Assuming that such an injunction is prospective injunctive relief, Trudeau still has not alleged that Bell, Brodie or Richardson are currently violating federal law.  Trudeau's claims are based on activity that occurred in 2017 and 2018.  Trudeau has not identified any disciplinary actions that remain to be taken.  And even if a future disciplinary action violated federal law, that would constitute a new violation, not one that is ***ongoing***.  *Verizon*, 535 U.S. at 645.  Further fatal to his claim, Trudeau "has neither shown nor pleaded a plausible claim that any of the official-capacity defendants . . . have the ability to grant the relief requested."  *Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597, 605 (S.D. Miss. 2019).

Trudeau's constitutional claims against UNT, Bell, Brodie and Richardson are barred by the Eleventh Amendment.  Because Trudeau sues Richardson only in his official capacity, *see*

Docket No. 18 ¶ 1.05, Richardson is dismissed from this case.[3]  The Court next considers the only claim remaining against UNT, Trudeau's Title IX claim.

## II.        Violation of Title IX Claim (Count I)

Defendants treat Count I as consisting of two separate claims: one for employment discrimination and one for retaliation.  *See* Docket No. 24 at 5–6; Docket No. 29 at 1–2 ("Trudeau . . . confuses the distinction between his retaliation claim and his discrimination ('erroneous outcome') claim.").  Trudeau does not contest this characterization, arguing that he has stated a Title IX claim under both an "erroneous outcome" theory and a "retaliation" theory.  *See* Docket No. 28 at 6–12, 27–29; Docket No. 30 at 1–3.  This reading of the First Amended Complaint stretches its language.  But for the purposes of Defendants' motion to dismiss, the Court adopts the same approach.

### A.        Title VII Preempts Trudeau's Erroneous Outcome Claim

Defendants contend that Trudeau's Title IX claim should be dismissed because Title VII preempts it.  Docket No. 24 at 5–6.  They argue that Trudeau's claim is really a gender discrimination claim and that the Fifth Circuit has limited such claims to Title VII actions.  *Id.*

"Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions."  *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995).  This is because reading a private right of action for damages for employment discrimination into Title IX "would disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers" that Title VII provides.  *Id.* at 753–54.  And the Fifth Circuit declined "to do such violence to the congressionally mandated procedures of Title VII."  *Id.* at 754.

---

[3] Trudeau's Title IX claim is limited to UNT because "[l]iability under Title IX does not extend to school officials, teachers and other individuals."  *Plummer v. Univ. of Houston*, 860 F.3d 767, 777 n.12 (5th Cir. 2017).

Title VII preempts Trudeau's erroneous outcome claim because he alleges "employment discrimination on the basis of sex in a federally funded educational institution." *Id.* at 753. An erroneous outcome claim attacks a university disciplinary proceeding on grounds of gender bias. *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019). It requires the plaintiff to (1) "point to particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) "demonstrate a causal connection between the flawed outcome and gender bias." *Id.* An erroneous outcome claim is, at its core, a gender discrimination claim. *See Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016) (an erroneous outcome claim is considered akin to a Title VII employment discrimination claim and is adequately pled if it alleges specific facts that support a "minimal plausible inference of discrimination"). And Trudeau brings his claim against his employer, making it an employment discrimination claim as well. While other circuits would entertain such claims under Title IX, *see id.*, the Fifth Circuit has barred them. *Lakoski*, 66 F.3d at 753.

Trudeau argues that Title VII does not preempt his Title IX claim. Docket No. 28 at 27. He is correct that Title VII does not preempt his retaliation claim. *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247–49 (5th Cir. 1997) ("Title VII provides no remedy, however, to employees of federally funded educational institutions who have suffered retaliation as a consequence of their opposition to noncompliance with title IX."). But his erroneous outcome claim is unrelated to his retaliation claim. District courts confronted with erroneous outcome and retaliation claims under Title IX treat them as separate theories. *See, e.g.*, *Verdu v. The Trustees of Princeton Univ.*, Civ. Action No. 19-12484 (FLW), 2020 WL 1502849 (D.N.J. March 30, 2020) (treating erroneous outcome and retaliatory claims as different theories); *Doe v. Bd. of Governors of Univ. of N. Carolina*, Case No. 1:18CV726, 2019 WL 4777402 (M.D.N.C. Sept. 30, 2019)

(same); *Robinson v. Howard Univ., Inc.*, 335 F.Supp.3d 13 (D.D.C. 2018) (same).  This makes sense: an erroneous outcome theory alleges that the result of a disciplinary hearing was due not to the merits of the underlying investigation but rather to the decisionmaker's gender bias.  A retaliation claim, on the other hand, alleges that the defendant retaliated against the plaintiff for her participation in a protected activity.  Bias need not necessarily underlie a retaliation claim; it is enough that a plaintiff participates in a protected activity and is retaliated against as a result.  It makes no difference that Trudeau does not intend to bring a Title VII claim, never initiated Title VII proceedings and never had an employment relationship with the complaining students.  *See* Docket No. 28 at 27–28.  What matters is that Title VII provides a remedy for the employment practices Trudeau complains of in his erroneous outcome claim, rendering a separate Title IX claim duplicative.  *Lakoski*, 66 F.3d at 752.  His retaliation claim survives the *Lakoski* rule, but his erroneous outcome claim does not.

### B.    Trudeau Has Failed to State a Claim for Title IX Retaliation

Turning to Trudeau's Title IX retaliation claim, Defendants contend that Trudeau has failed to state a claim because he was the alleged harasser who participated in the investigation against him and was found to be responsible.  Docket No. 24 at 6–9.  In Defendant's view, allowing a claim like Trudeau's to proceed would create an avenue for collateral attack on investigative determinations and "create a disincentive against the imposition of sanctions—even in the clearest cases of wrongdoing—because of the ease in which a perpetrator could threaten protracted litigation."  *Id.* at 8.

To state a claim for Title IX retaliation, Trudeau must show that: (1) he engaged in a protected activity, (2) he suffered an adverse employment action and (3) a causal connection exists between the protected activity and the adverse employment action.  *See Willis v. Cleco Corp.*, 749

F.3d 314, 317 (5th Cir. 2014).   Defendants' argument is untethered from this test and must be rejected as a result.  This Court considered a similar one in *Wilkerson v. University of North Texas*, 223 F. Supp. 3d 592 (E.D. Tex. 2016).  There, the plaintiff, a UNT professor, participated and provided evidence in a sexual harassment investigation against him.  *Id.* at 603.  Though the investigation exonerated him, he was later fired.  *Id.*  In moving to dismiss his subsequent Title IX retaliation claim against the University, UNT argued "that Plaintiff is not entitled to protection because he was the person being investigated and Title IX does not protect that kind of person." *Id.* at 602.  In rejecting that argument, the Court read 34 C.F.R. § 100.7(e) broadly to protect the subject of a sexual harassment claim.  *Id.* at 603.  "Anything less would place too great a weight on false accusations by stripping the subject of the investigation of all protections from the very institution that is supposed to be an impartial tribunal."  *Id.*

The situation here is somewhat different from that in *Wilkerson*.  Trudeau alleges that the retaliatory act was the outcome of the investigation against him, whereas in *Wilkerson* the retaliatory act was the plaintiff's dismissal after the investigation concluded with exoneration.  *See id.* at 603.  Though the decision not to retain the *Wilkerson* plaintiff was based at least in part on the fact of the investigation, the retaliatory act itself was essentially disconnected from it.  *Id.* Defendants would have this distinction be determinative.  Docket No. 24 at 7.  In doing so, they overread *Wilkerson*.  That case does not alter the traditional test for retaliation claims, nor does it imply that additional factors should be considered in contexts such as this one.

Nonetheless, Trudeau fails to state a claim for Title IX retaliation.  The complaint lacks any allegations of a causal connection between his participation in the Title IX investigation and its outcome.  Trudeau alleges that Defendants failed to fully investigate the claims, conducted an investigation that was "predetermined, improper, [and] deficient," favored the testimony of women

over his, and ignored UNT policies because of the victims' gender.  Docket No. 18 ¶¶ 6.12, 6.36, 12.  None of these allegations, taken as true, show a causal connection between Trudeau's participation in the investigation and the investigation's outcome.  Though Trudeau does include a "Causal connection/inference" subheading in his responsive brief, he does not directly address the causation prong.  *See* Docket No. 28 at 29.  Instead, he states that his "complaints relate specifically to the Title IX process and investigation." *Id.*  Without allegations showing causation, his complaints do not state a Title IX retaliation claim.

Accordingly, Trudeau's Title IX claim is **DISMISSED WITHOUT PREJUDICE** to Trudeau refiling and alleging facts supporting the inference that his participation in the investigation was the but-for cause of the adverse outcome.  Only Trudeau's constitutional law claims against Bell and Brodie in their personal capacities remain.  The Court next considers Defendants' assertion of qualified immunity.

## III.   Qualified Immunity

Defendants contend that qualified immunity bars Trudeau's constitutional claims against Bell and Brodie in their individual capacities.  Docket No. 24 at 15–18.  Qualified immunity ensures that government employees are not impeded from their public work to defend frivolous actions.  *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).  It is an immunity born of freedom from suit rather than a defense to liability.  *Del A. v. Edwards*, 855 F.2d 1148, 1150 (5th Cir. 1988).  Qualified immunity shields government officials conducting discretionary functions "from liability for civil damages insofar as their conduct does not [1] violate clearly established statutory or constitutional rights [2] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Accordingly, "[t]he qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff;

and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  A court may rest its analysis on either prong.  *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011).

To determine whether Bell and Brodie are entitled to qualified immunity, the Court begins with the first prong and examines whether the challenged conduct, viewed in the light most favorable to Trudeau, amounts to a violation of federal law.  The Court turns to this task next.

## IV.   Violation of Due Process Claim (Count II)

Defendants contend that Trudeau has failed to state a claim for due process violations because he has not adequately alleged that he is entitled to the property or liberty interests of which he has been deprived.  Docket No 24 at 11–15.  The First Amended Complaint alleges that Defendants violated both Trudeau's procedural and his substantive due process rights, Docket No. 18 ¶ 15, so the Court addresses each in turn.

### A.   Procedural Due Process

"To state a Fourteenth Amendment [procedural] due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest."  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quotation and citation omitted).  "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In other words, "a property interest falling under due process protections must be established by reference to some outside source—such as state law or contract."  *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997) (citing *Roth*, 92 S. Ct. at 2704).  "[U]nless the state

'specifically creates a property interest in a noneconomic benefit—such as a work assignment—a property interest in employment generally does not create due process property protection for such benefits.' " *Davis v. Mann*, 882 F.2d 967, 973 n. 16 (5th Cir. 1989).

Trudeau alleges that he "had a constitutionally protected property interest in his employment by UNT" and that, as a result of Defendants' actions, he "has been deprived of the rights and privileges associated with his property interest and tenure, including, but not limited to, the loss of significant income associated with projects and academic leadership positions and other benefits ancillary to his position as a tenured UNT professor." Docket No. 18 ¶¶ 25, 28. Specifically, he was denied merit pay and summer teaching positions. *Id.* ¶ 6.31. And because the investigation was not confidential, Trudeau lost a graduate student he had been advising, and no graduate student has sought him out as an advisor since. *Id.* ¶ 6.27. This has negatively affected his teacher score and impacted him financially by way of merit allocation. *Id.*

Trudeau has not alleged any facts supporting his contention that he has been deprived of a constitutionally protected property interest. The complaint fails to allege a single state law or contractual basis for Trudeau's alleged property interests. Trudeau does not even cite to his employment contract. At best, Trudeau has alleged "a mere subjective 'expectancy,' " which procedural due process does not protect. *Perry v. Sindermann*, 408 U.S. 593, 603 (1972). And the Fifth Circuit has repeatedly recognized that a public employee may hold a property interest in her employment but not in the non-economic benefits of that employment, such as serving in a particular office or capacity. *Schoppa Family v. Kupersmith,* 54 F. App'x 592, 2002 WL 31730375, at *5 n. 11 (5th Cir. 2002) (enumerating instances of public employees not constitutionally entitled to specific work assignment).

Trudeau contends that he has sufficiently alleged deprivation of constitutionally protected property interests because his professional reputation is at stake and because he has suffered financially.  Docket No. 28 at 24–25.  For support, he cites to *Smock v. Board of Regents of the University of Michigan*, 353 F. Supp. 3d 651, 657 (E.D. Mi. 2018).  There, the court found that "[a] change of job duties can be something much more when it both stigmatizes the employee and forces her to work beneath her station."  *Id.*  But Trudeau alleges no facts that would support such a conclusion.  In *Smock*, the plaintiff had alleged "that her role as an advisor to graduate students is necessary to her scholarship and her standing in the academic community."  *Id.*  Assuming this meets the Fifth Circuit's standard for constitutionally protected property interests, Trudeau has not so alleged.

Trudeau's liberty interest claim fares no better.  The Fifth Circuit employs a seven-element "stigma-plus-infringement" test to determine whether a plaintiff has a § 1983 claim for deprivation of liberty without notice or opportunity to clear his name, in which a plaintiff must show that: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)).  Trudeau does not allege that he was discharged; indeed, he is still employed by UNT.

Accordingly, Trudeau has failed to state a claim for procedural due process violations.

### B.    Substantive Due Process

Neither party addresses Trudeau's substantive due process claim in their briefs.   *See generally* Docket Nos. 24, 28.   The Court nevertheless examines whether Trudeau has stated a claim for a violation of his substantive due process rights and concludes that he has not.

Unlike procedural due process, substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."   *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation and internal quotation marks omitted).   It "provides heightened protection against government interference with certain fundamental rights and liberty interests," which are held to a more exacting standard of strict scrutiny.   *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).   "The conceptual essence of 'substantive' due process is the notion that the Due Process Clause—in addition to setting procedural minima for deprivations of life, liberty, or property—bars outright 'certain government actions regardless of the fairness of the procedures used to implement them.' "   *Brennan v. Stewart*, 834 F.2d 1248, 1255 (5th Cir. 1988) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).   One form of "substantive" due process is the substantive protections in the Bill of Rights that have been "incorporated" into the Fourteenth Amendment to limit the power of the states.   *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010) (Scalia, J., concurring).   In addition, "[a] liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies."   *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted).   Historically, the *Glucksberg* analysis has applied to the determination of whether a right is fundamental.   That analysis requires "a careful description of the asserted fundamental liberty interests," which must be "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of

ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg*, 521 U.S. at 720–21.

Trudeau has failed to allege what "fundamental liberty interests" Defendants allegedly deprived him of, and the Court will not mine his complaint to identify them.  Trudeau has not stated a claim for substantive due process violations.  *See id.*

At this stage, the Court is not able to conclude that Trudeau cannot state a claim for procedural or substantive due process violations.  It therefore declines to reach the issue of Bell and Brodie's qualified immunity.  Trudeau's violation of due process claim (Count II) is **DISMISSED WITHOUT PREJUDICE** to Trudeau refiling and alleging facts supporting the existence of an outside source for his alleged constitutionally protected property interests and identifying his fundamental liberty interests.

## V.      Violation of First Amendment Claim (Count III)

Defendants assert that Trudeau has failed to state a claim for first amendment retaliation because the speech at issue is not constitutionally protected.  Docket No. 24 at 9–10.  Their contention is twofold: first, speech made pursuant to official job duties is not constitutionally protected, and second, Trudeau did not plead facts showing that he spoke on a matter of public concern.  *Id.*  Trudeau counters that Defendants have applied the wrong test and have failed to consider the "academic exception."  Docket No. 28 at 12.  Trudeau further contends that the "content, form, and context" of his speech demonstrates that it involved a matter of public concern because it related to the instruction of his students.  *Id.* at 15–21.

The parties therefore pose two questions.  First, what test should apply to Trudeau's claim? There are two candidates: (1) the *Pickering* test, advanced by Trudeau, which balances "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the

interest of the State, as an employer, in promoting the efficiency of the public services it performs

through its employees," *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); and (2) the *Garcetti*

test, which Defendants advocate and which adds the threshold question of whether the employee

was speaking pursuant to her job duties. *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006). The

second question the parties pose is: did Trudeau speak on a matter of public concern? The second

question is relevant to both tests, *see id.*, so the Court addresses that question first. But as the

following discussion will demonstrate, the answers to both questions show that Trudeau's

constitutional right to make sexual comments while teaching was not clearly established, meaning

that Bell and Brodie are entitled to qualified immunity on Trudeau's First Amendment claim.

**A.      Whether Trudeau Spoke on a Matter of Public Concern**

Trudeau alleges that his "speech involved a matter of public concern, in that it served an

academic purpose and was related to the subject matter of the course at issue during the 2017 Fall

academic year." Docket No. 18 ¶ 31. Invoking the concept of academic freedom, he contends

that the instructional content, pedagogical form and classroom context of his speech demonstrate

that he spoke on a matter of public concern. Docket No. 28 at 15–21, 26.

"When employee expression cannot be fairly considered as relating to any matter of

political, social, or other concern to the community, government officials should enjoy wide

latitude in managing their offices, without intrusive oversight by the judiciary in the name of the

First Amendment." *Connick v. Myers*, 461 U.S. 138, 146 (1983). "[P]ublic concern must be

determined by the content, form, and context of a given statement, as revealed by the whole

record." *Id.* at 147–48. "Speech involves a matter of public concern when it involves an issue of

social, political, or other interest to a community." *Buchanan v. Alexander*, 919 F.3d 847, 853

(5th Cir. 2019). Academic freedom is "a special concern of the First Amendment, which does not

tolerate laws that cast a pall of orthodoxy over the classroom." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 602–03 (1967). Whether speech is protected as a matter of public concern is a question of law. *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). As such, Trudeau's conclusions about the nature of his speech are not entitled to any weight. *Iqbal*, 556 U.S. at 678.

Trudeau's reliance on academic freedom is misplaced. "Although, the concept of academic freedom has been recognized in our jurisprudence, the doctrine has never conferred upon teachers the control of public school curricula." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 800 (5th Cir. 1989) (citing *Lovelace v. Southeastern Mass. Univ.,* 793 F.2d 419, 426 (1st Cir. 1986) (stating that the "first amendment does not require that each nontenured professor be made a sovereign unto himself" with respect to course content, homework and grading policy)). If the right of academic freedom exists at all, it inures to the benefit of the University, not to the individual professor. *See Urofsky v. Gilmore*, 216 F.3d 401, 412 (4th Cir. 2000) ("The Supreme Court, to the extent it has constitutionalized a right of academic freedom at all, appears to have recognized only an institutional right of self-governance in academic affairs."); *id.* at 414 (further stating that "the Court has never recognized that professors possess a First Amendment right of academic freedom to determine for themselves the content of their courses and scholarship, despite opportunities to do so"); *see also Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978) (Academic freedom implicates "[t]he freedom of a university to make its own judgments as to education"). Trudeau does not identify any opinion that applies academic freedom to the choices of individual professors, and the Court is not aware of any.

Without recourse to academic freedom, courts have differed on the appropriate manner of protecting a teacher's curricular and pedagogical choices under the First Amendment. The First, Second, Seventh, Tenth, and Eleventh Circuits have extended the Supreme Court's standard for

student speech[4] to teachers' instructional speech. *See, e.g.*, *Lacks v. Ferguson Reorganized Sch. Dist. R–2*, 147 F.3d 718, 719 (8th Cir. 1998); *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Ed.*, 42 F.3d 719, 723 (2d Cir. 1994); *Ward v. Hickey*, 996 F.2d 448, 453 (1st Cir. 1993); *Webster v. New Lenox Sch. Dist. No. 122*, 917 F.2d 1004, 1008 (7th Cir. 1990); *Miles v. Denver Pub. Sch.*, 944 F.2d 773 (10th Cir. 1991); *Bishop v. Aronov*, 926 F.2d 1066, 1074 (11th Cir. 1991)).   Other circuits, including the Fifth Circuit, have applied the Supreme Court's more restrictive standard for analyzing official speech of public employees, *i.e.*, the *Pickering* or *Garcetti* tests, when considering whether the First Amendment protects instructional speech.   *See Edwards v. Calif. Univ. of Penn.,* 156 F.3d 488, 491 (3d Cir. 1998) (concluding "that a public university professor does not have a First Amendment right to decide what will be taught in the classroom"); *Boring v. Buncombe County Bd. Of Ed.*, 136 F.3d 364, 368 (4th Cir. 1998); *Kirkland*, 890 F.2d at 798 (holding that teacher speech attains "protected status if the words or conduct are conveyed by the teacher in his *role as citizen* and not in his *role as an employee* of the school district" (emphases in original)).   The Sixth Circuit adopts yet another methodology, applying a content-based approach.  *Evans–Marshall v. Board of Education of Tipp City*, 428 F.3d 223 (6th Cir. 2005); *Cockrel v. Shelby County School Dist.*, 270 F.3d 1036 (6th Cir. 2001).   What is clear from these decisions is that speech serving "an academic purpose" is not categorically entitled to protection, as Trudeau contends.  *See* Docket No. 28 at 18–19.   Rather, even in the academic context, courts examine the nature and content of the speech and the role that the speaker occupies when speaking.

---

[4] Schools may regulate student speech in three circumstances: when the speech is (1) school-sponsored, (2) "offensively lewd and indecent," or (3) likely to cause substantial and material disruption of school activities.  *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 267 (1988) (determining that schools may regulate "school-sponsored" speech "so long as their actions are reasonably related to legitimate pedagogical concerns"); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986) (recognizing broad school authority to restrict "offensively lewd and indecent speech"); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (holding that student speech may be restricted if it causes "substantial disruption of or material interference with school activities").

Trudeau denies making the comments attributed to him.  *See* Docket No. 18 ¶ 6.30.  But he acknowledges that the comments were "sexual" due to the theme of the book chapter (*i.e.*, eroticism) and the nature of the student's performances based thereon.   Docket No. 30 at 4.  Trudeau has not adequately alleged or argued that he spoke on a matter of public concern when he made sexual comments about his students' performances.  He has not identified, nor is the Court aware of, any public debate about the use of eroticism as a performing art or as a method that directors use to elicit stirring performances from their actors.  The Court cannot say, on the current record, that Trudeau's comments contributed to public discourse on the nature of performance arts, and accordingly, it cannot say that Trudeau spoke on a matter of public concern.

Trudeau's cited authority is inapposite.  In *Cohen v. San Bernardino Valley College*, a university professor brought a First Amendment retaliation claim against his employer after being punished under the university's sexual harassment policy for sexual comments he made while teaching.  92 F.3d 968, 970 (9th Cir. 1996).  The court did not consider whether Cohen's statements were on matters of public concern; rather, the court reversed the judgment of the district court because the sexual harassment policy was unconstitutionally vague.  *See id.*  Trudeau does not allege that UNT's policies are unconstitutionally vague.

In *Buchanan*, the Fifth Circuit held that a university professor had not spoken on a matter of public concern while teaching because her sexualized speech "was not related to the subject matter or purpose of training Pre-K–Third grade teachers."  *Buchanan*, 919 F.3d at 853.  The Court went on to note that "[t]his court has held that, in the college classroom context, speech that does not serve an academic purpose is not of public concern."  *Id.*  Trudeau seizes upon this language and argues that speech that *does* serve an academic purpose *is* of public concern.  *See* Docket No. 28 at 18–19.  Aside from committing a logical fallacy by denying the antecedent, Trudeau

misapprehends the Fifth Circuit's point.  After all, one of the cases it cited in support of its proposition was *Dambrot v. Central Michigan University*, which held that "[a]n instructor's choice of teaching methods does not rise to the level of protected expression."  *Buchanan*, 919 F.3d at 853 n.20 (citing 55 F.3d 1177, 1190 (6th Cir. 1995)).

Finally, in *Hardy v. Jefferson Community College*, the Sixth Circuit held that the First Amendment protected a professor's right to use vulgarity and racial slurs while discussing the historical use of oppressive and marginalizing language.  260 F.3d 671, 682 (6th Cir. 2001).  But the public concern of such speech is readily apparent, relating as it did to the oppression and marginalization of minorities in America.  *See id.* at 679.  Here, in contrast, Trudeau has failed to point to any public debate or discussion related to the subject matter of his speech or to explain how his speech "teaches students the process of rational discourse that allows them to participate meaningfully in public debate."  *Id.*

Because Trudeau has failed to adequately allege that he spoke on a matter of public concern while commenting on his students' performances, he has failed to state a claim for First Amendment retaliation under either test that the parties urge the Court to apply.  Even if he had spoken on a matter of public concern, his right to teach how he sees fit, if it exists at all, was not clearly established.  *See, e.g.*, *Edwards,* 156 F.3d at 491 ("[A] public university professor does not have a First Amendment right to decide what will be taught in the classroom").  The Court now turns to the second question, the answer to which further demonstrates that Trudeau's alleged constitutional right was not clearly established at the time of Bell and Brodie's actions.

## B.  Whether the *Garcetti* Test Applies to Trudeau's First Amendment Claim

*Pickering* governed public employees' First Amendment retaliation claims for decades. The Supreme Court defined the test as seeking "a balance between the interests of the [employee],

as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. at 568.  The *Pickering* test required courts to consider, first, whether the plaintiff was disciplined or fired for speech that is a matter of public concern, and second, whether the plaintiff's interest in the speech outweighed the university's interest in regulating the speech.  *See Connick*, 461 U.S. at 147–50.  Then, in 2006, the Court confronted the threshold question "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties."  *Garcetti*, 547 U.S. at 413.  Concluding that it did not, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id.* at 424.

With this threshold inquiry in mind, post-*Garcetti* case law has held that, to state a valid First Amendment retaliation claim, a public employee must show that: (1) she was not speaking pursuant to her official job duties; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs her employer's interest in promoting efficiency; (4) the plaintiff suffered an adverse employment action; and (5) her speech motivated the adverse employment decision.  *See Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007).  If the public employee spoke pursuant to her official job duties, that "speech is not constitutionally protected, no matter how great its social significance."  *See Ezell v. Wells*, No. 2:15-CV-00083-J, 2015 WL 4191751, at *10. (N.D. Tex. July 10, 2015).

The *Garcetti* Court, however, recognized that its decision could "have important ramifications for academic freedom, at least as a constitutional value."  547 U.S. at 425.  Justice Souter's dissent invoked this pronouncement when he expressed his hope that "today's majority

does not mean to imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.' " *Id.* at 438 (Souter, J., dissenting).  The majority acknowledged "some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence." *Id.* Nonetheless, it declined to decide the issue, stating that "[w]e need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." *Id.*

Since *Garcetti*, federal courts "have reached mixed results on whether there should be some kind of academic exception to the 'official duties' test of Garcetti, and if so, whether it should only apply to higher education and under what circumstances." *Teachers and the First Amendment*, 1 EDUCATION LAW § 2:18.  The Fourth Circuit has recognized the exception in all academic contexts. *Adams v. Trs. of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 562 (4th Cir. 2011).  The Sixth and Seventh Circuits apply *Garcetti* at the primary and secondary school level but have not stated whether it applies to higher education.  *See Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 716 (7th Cir. 2016); *Evans–Marshall v. Board of Education of Tipp City*, 624 F.3d 332, 340–44 (6th Cir. 2010).  The Ninth Circuit recognizes the exception in higher education but not in primary or secondary education.  *See Demers v. Austin*, 746 F.3d 402, 411–12 (9th Cir. 2014); *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 962–63 (9th Cir. 2011).  The Second Circuit uses an alternative standard, holding that "school administrators may limit the content of school-sponsored speech so long as the limitations are reasonably related to legitimate pedagogical concerns." *Panse v. Eastwood*, 303 F. App'x 933, 934–35 (2d Cir. 2008).

The Fifth Circuit has not weighed in.  Recently, without mentioning *Garcetti*, it applied the *Pickering* test to a public university professor's First Amendment claim.  *Buchanan*, 919 F.3d at 853.  But the Fifth Circuit has long acknowledged that "[w]hen a public employee speaks in his capacity as an employee and on personal matters, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment."  *See id.*  The court left unresolved the question of what test should apply when a university professor speaks in an official capacity on non-personal matters, but it made clear that she would not enjoy unfettered pedagogical discretion.  *See id.* at 852 ("Students, teachers, and professors are not permitted to say anything and everything simply because the words are uttered in the classroom context.").

No higher court has applied *Garcetti* to a university professor's First Amendment retaliation claim.  Few district courts apply *Garcetti* in these contexts, and those that have did so because they concluded that the Supreme Court had not carved out an exception for faculty speech related to teaching.  *See, e.g.*, *Meriwether v. Trustees of Shawnee State Univ.*, No. 1:18-CV-753, 2019 WL 4222598, at *12 (S.D. Ohio Sept. 5, 2019), report and recommendation adopted, No. 1:18-CV-753, 2020 WL 704615 (S.D. Ohio Feb. 12, 2020).  This logic is not persuasive.  The Supreme Court specifically declined to decide whether its analysis ***would apply*** in the academic context, not whether it ***would not apply***.  *See Garcetti*, 547 U.S. at 425.  The clear import of the Court's language is that its analysis ***does not apply*** to academic speech, though it left open the possibility that it would later decide that it does.  *See id.*  This Court therefore concludes that an academic exception to *Garcetti* exists in the higher education context.

The analysis still does not end here because, as the length of this discussion itself demonstrates, the correct test for Trudeau's First Amendment claim was not clearly established, and a reasonable university official could have concluded that *Garcetti* applies to classroom

speech.  *See, e.g.*, *Klaassen v. Univ. of Kansas Sch. of Med.*, 84 F. Supp. 3d 1228, 1253 (D. Kan. 2015) ("Because a 'reasonable officer' could conclude, based on the state of the law, that the *Garcetti* test applied to plaintiff's speech, the Individual Defendants are entitled to qualified immunity on plaintiff's First Amendment retaliation claim.").  Thus, if Trudeau spoke pursuant to his official duties, then Bell and Brodie are entitled to qualified immunity against Trudeau's First Amendment retaliation claim.  *Id.*; *see also Nunez*, 341 F.3d at 387.

### C.      Trudeau Spoke Pursuant to His Official Duties

Defendants assert that Trudeau spoke pursuant to his official duties because he made the comments in class while he taught his students.  Docket No. 24 at 9–10.  Trudeau counters that "the speech at issue relates to the 'content and context' of the classroom teaching environment and therefore is not a matter of Dr. Trudeau's 'official duties.' "  Docket No. 28 at 14.  Whether an employee is speaking as a citizen or pursuant to her employment is a question of law that "involves the consideration of factual circumstances surrounding the speech at issue."  *Charles v. Grief*, 522 F.3d 508, 513 n.17 (5th Cir. 2008).

"A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech ***that has some potential to affect the entity's operations***."  *Garcetti*, 547 U.S. at 410 (emphasis added).  The Fifth Circuit has defined "pursuant to official duties" as "activities undertaken in the course of performing one's job."  *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).  The speech need not be "required" by the plaintiff's job duties to fall within these parameters; rather, it is enough that the speech be "closely related" to the duties.  *Id.* at 312.

Trudeau is a university professor.  Professors teach.  Trudeau's speech provided feedback to students on their in-class performances and was directly related to classroom instruction.  *See*

Docket No. 28 at 14.   He therefore spoke pursuant to his official duties.   "Classroom or instructional speech . . . is inevitably speech that is part of the instructor's official duties . . . ." *Piggee v. Carl Sandburg Coll.*, 464 F.3d 667, 671 (7th Cir. 2006); *see also Meriwether*, 2019 WL 4222598, at *12 ("Given plaintiff's employment duties (university professor), the setting of plaintiff's speech (a university classroom), the audience (the students in his Political Philosophy class), the impetus for the speech (to address students in a manner that plaintiff considered to be an important pedagogical tool), and the general subject matter of the speech (titles and pronouns for addressing students in his classroom), the Court concludes as a matter of law that plaintiff spoke pursuant to his official duties.").

Trudeau has failed to state a claim for First Amendment retaliation.   In no event could he state a claim based upon a clearly established constitutional right.   Bell and Brodie are therefore entitled to qualified immunity on his claim.   Trudeau's First Amendment claim (Count III) is **DISMISSED WITH PREJUDICE**.

## VI.     Violation of Equal Protection Claim (Count IV)

Defendants contend that Trudeau has failed to state a claim for an equal protection violation because he pleads no facts to support his complaint of gender discrimination.   Docket No. 24 at 10–11.   "To maintain an equal protection claim, a plaintiff typically alleges that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent."   *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir.2009) (quotation and citation omitted).   "[D]isparate impact alone" is not enough; rather, "a party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury."   *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

Trudeau alleges that "[f]emale UNT employees suffer no historical disadvantage regarding sexual misconduct allegations which would allow UNT and its employees to validly discriminate against male employees like Dr. Trudeau."  Docket No. 18 ¶ 35.  But he does not provide any statistics or anecdotes supporting this conclusory allegation.  Trudeau argues that the allegations in the complaint demonstrate that the two "sides" of the investigation were treated differently, and he "believes discovery will demonstrate that UNT male employees are treated differently where the issue is sexual harassment, and asserts that female employees so no [sic] or little accusations of sexual harassment verses male employees, in particular male professors."  Docket No. 28 at 26–27.  But Trudeau's allegations of disparate treatment in the investigation do not state a claim for an equal protection violation because the female victims of Trudeau's alleged harassment are not, as they must be, "similarly situated individuals."  *See Hilton*, 568 F.3d at 212.  And Trudeau cannot rely on expectations of what discovery will show to support his claim.  *Iqbal*, 556 U.S. at 678.  He therefore has not sufficiently alleged disparate treatment.

At this stage, the Court is not able to conclude that Trudeau cannot amend his complaint to state an equal protection claim.  It therefore declines to reach the issue of Bell and Brodie's qualified immunity.  Accordingly, Trudeau's equal protection claim (Count IV) is **DISMISSED WITHOUT PREJUDICE** to Trudeau refiling and alleging specific facts showing disparate treatment and that the disparate treatment is the result of purposeful discrimination.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED**.  Trudeau's claims for violations of Title IX (Count I), due process (Count II), and equal protection (Count IV) are **DISMISSED WITHOUT PREJUDICE**.  Trudeau's First Amendment claim (Count III) is **DISMISSED WITH PREJUDICE**.  It is

**ORDERED** that Trudeau must file any amended complaint within **30 days** of the date of this order.

**So ORDERED and SIGNED this 20th day of April, 2020.**

Robert W Schroeder III

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE