## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| JUSTIN TRUDEAU, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00723 |
| | § | |
| UNIVERSITY OF NORTH TEXAS, | § | |
| by and through its Board of Regents, | § | |
| EVE BELL, in her Individual and | § | |
| Official Capacities; CHRISTINA | § | |
| BRODIE, in her Individual and | § | |
| Official Capacities; BRIAN | § | |
| RICHARDSON, in his Individual | § | |
| and official Capacity; DAVID | § | |
| HOLDEMAN, in his Individual and | § | |
| Official Capacity; and STEVEN | § | |
| COBB, in his Individual and Official | § | |
| Capacity, | § | |
| *Defendants*. | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
## SECOND AMENDED COMPLAINT

---

Defendants, the University of North Texas ("UNT"), Eve Bell in her individual and official capacities, Christina Brodie, in her individual and official capacities, and Brian Richardson, in his individual and official capacity, (collectively "Defendants"), file this Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and respectfully show as follows:

# I.    INTRODUCTION AND BACKGROUND

Plaintiff Justin Trudeau is a UNT professor and brings this lawsuit complaining of UNT's Title IX investigation and resulting sanction against him based on student complaints of his sexually inappropriate behavior. The student complaints included, among other things, claims that Trudeau stated, "No one gets through my class without getting naked;" told a female student that she had "fuck me eyes;" and "jokingly" told another student, who was acting as student-director, that he would "give her an 'A' if the performers got naked." (Dkt. 32, ¶6.05) Trudeau participated in the investigation against him and denied any wrongdoing. (Dkt. 32, ¶¶ 6.14, 6.16.) He claims he ultimately received a sanction of ineligibly for a merit pay increase for a period of two years. (Dkt. 32, ¶6.36-6.37.) He brings this lawsuit asserting various causes of action challenging the investigation and resulting sanction.

The Court previously granted Defendants' Motion to Dismiss but allowed Trudeau to replead his Title IX, due process, and equal protection claims (Dkt. 31). Trudeau timely filed his Second Amended Complaint. (Dkt. 32).

Trudeau's Second Amended Complaint failed to cure the deficiencies identified by the Court in its order granting Defendants' Motion to Dismiss. Trudeau's claim under Title IX must be dismissed because he still has pleaded no facts to show that he was retaliated against for participating in the Title IX investigation. His due process and equal protection claims must also be dismissed. To the extent he brings those claims against UNT and current UNT officials Bell and Richardson, and former

2

UNT official Brodie (collectively, the "Officials"), in their official capacities, such claims are barred by sovereign immunity and must be dismissed pursuant to Rule 12(b)(1). The constitutional claims must also be dismissed because Trudeau fails to state a claim for a violation of due process and equal protection. Likewise, Plaintiff's claims against the Officials in their individual capacities are barred by qualified immunity.

## II.    STANDARD OF REVIEW

Federal Rule of Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). A motion to dismiss pursuant to Rule 12(b)(1) is analyzed under the same plausibility standard as a motion to dismiss under Rule 12(b)(6). *See Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *see also infra*. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### III.   STATEMENT OF THE ISSUES

1.   Whether the claims against Holdeman, Cobb, and Richardson are properly before the Court. (pp. 4-5)

2.   Whether UNT and the Officials in their official capacities retain sovereign immune to Trudeau's constitutional claims. (pp. 5-6)

3.   Whether Trudeau fails to state a claim for retaliation under Title IX. (pp.6-8)

4.   Whether Trudeau fails to state a due process claim. (pp. 8-12)

5.   Whether Trudeau fails to state an equal protection claim. (pp. 12-13)

6.   Whether the Officials sued in their individual capacities are entitled to qualified immunity. (pp. 14-15)

### IV.   ARGUMENT AND ATHORITIES

**A.   The claims against Holdeman, Cobb, and Richardson are not properly before the Court.**

Trudeau's Second Amended Complaint seeks to add David Holdeman and Steven Cobb, sued in their individual and official capacities, and Brian Richardson, sued in his individual capacity, to this lawsuit. It does not appear that they have been served with process, and the deadline to add new parties without seeking leave of

4

Court lapsed on February 7, 2020 pursuant to the Court's Docket Control Order. (Dkt. 16) Trudeau never sought leave.

Defendants would be prejudiced by the addition of new parties eight months into this litigation as it would delay resolution of the case, likely require Defendants to expend additional resources, and no good cause exists for the late additions. The additions are also futile. A review of the Second Amended Complaint reveals that the claims against the purported new parties fare no better than the claims against Defendants which must be dismissed for the reasons set forth below.[1]

Finally, while Richardson, *in his official capacity*, was previously a party to this lawsuit, the Court dismissed him from this case. (Dkt. 31, p.9-10 ("Because Trudeau sues Richardson only in his official capacity, *see* Docket No. 18 ¶1.05, Richardson is dismissed from this case.")). The claims against Richardson in his official capacity are thus barred by the doctrines of res judicata and collateral estoppel and must be dismissed.

## B. Whether UNT and the Officials in their official capacities are immune from Trudeau's constitutional claims.

Defendants read the Court's order dismissing Trudeau's Amended Complaint as precluding Trudeau from reasserting his constitutional challenges against Defendants except to the extent the due process and equal protection claims are brought against Brodie and Bell in their individual capacities. (Dkt. 31.) The

---

[1] Defendants' opposition to the addition of new parties should not be construed as an appearance on behalf of those purported parties.

precluded claims are barred under the doctrines of res judicata and collateral estoppel. Out of an abundance of caution, and because Trudeau appears to continue to assert constitutional challenges against UNT and the Officials in their official capacities, Defendants reassert sovereign immunity as a defense to those claims.

As the Court previously held, sovereign immunity bars the constitutional claims against both UNT and the Officials in their official capacities, and the *Ex Parte Young* exception to immunity is inapplicable. (Dkt. 31, pp. 8-10). Trudeau pleads no facts in his Second Amended Complaint that change that analysis. He neither seeks injunctive relief that can be characterized as prospective, nor does he allege that the Officials are currently violating federal law. Further, "Trudeau 'has neither shown nor pleaded a plausible claim that any of the official-capacity defendants . . . have the ability to grant the relief requested.'" (Dkt. 31, p. 9 (quoting *Doe v. Univ. of Mississippi*, 361 F. Supp. 3d 597, 605 (S.D. Miss. 2019)). Sovereign immunity bars the constitutional claims against UNT and the Officials in their official capacity. Those claims must be dismissed with prejudice.

## C.   Trudeau fails to state a claim for Title IX retaliation.

In previously dismissing Trudeau's Title IX retaliation claim, the Court held that

> [t]he complaint lacks any allegations of a causal connection between his participation in the Title IX investigation and its outcome. Trudeau alleges that Defendants failed to fully investigate the claims, conducted an investigation that was 'predetermined, improper, [and] deficient,' favored the testimony of women over his, and ignored UNT policies because of the victims' gender. Docket No. 18 ¶¶6.12, 6.36, 12. None of

6

> these allegations, taken as true, show a causal connection between
> Trudeau's participation in the investigation and the investigation's
> outcome.

(Dkt. 31, p. 13). The allegations in Trudeau's Second Amended Complaint are deficient for the same reasons. *See* (Dkt. 32 ¶6.39 (claiming the investigation was "predetermined, improper, [and] deficient"); ¶6.41 ("Plaintiff, a male, combined with the gender of the supposed 'victims,' all women, resulted in UNT to take the women's testimony as truthful."); ¶12 (alleging discipline was based on UNT's concern "relating to the 'me too' movement [and] its desire to advocate for the female students no matter the strength or weakness of the allegations"); ¶13 ( asserting that UNT's retaliatory motives "centered around the fact that a male professor was accused by UNT, and that Plaintiff had to be punished due to the current climate of males being accused of sexual misconduct around the country")).

Trudeau's theory that the investigation was "predetermined" and that he "had to be punished" due to the "me too" movement is fundamentally at odds with a claim of retaliation *based on his participation* in the Title IX investigation. If the outcome was predetermined, then his participation was irrelevant. The facts he has pleaded thus negate the required showing of causation. In any event, his Second Amended Complaint contains no new factual allegations showing "a causal connection between Trudeau's participation in the investigation and the investigation's outcome." (Dkt. 31, p. 13).

Instead, Trudeau seems to advance a claim of retaliation *for being male*. (Dkt. 32, ¶13) ("Plaintiff was punished due to UNT's resolve to punishment [sic] males no matter the allegation."). But that is merely a reframing of the Title IX discrimination claim the Court previously dismissed as preempted by Title VII. *Compare* (Dkt. 31, p.12) (holding that discrimination claims under a Title IX erroneous outcome theory involve claims of "the decisionmaker's gender bias") *with* (Dkt. 32 ¶14) (Trudeau attributing decision to "anti-male bias"). Artful pleading does not change the nature of the claim, and conclusory allegations that UNT's actions were "retaliatory" (Dkt. 32 ¶¶13, 14, 15) are insufficient to state a claim. *Plotkin*, 407 F.3d at 696. Trudeau's Title IX retaliation claim must be dismissed with prejudice.

**D.  Trudeau fails to state a claim to support a violation of due process.**

As the Court found regarding his Fist Amended Complaint, Trudeau's Second Amended Complaint similarly fails to "allege[] any facts supporting his contention that he has been deprived of a constitutionally protected property interest." (Dkt. 31, p. 16); *see also Davis v. Mann*, 882 F.2d 967, 973 n. 16 (5th Cir. 1989) ("[U]nless the state 'specifically creates a property interest in a noneconomic benefit—such as work assignment—a property interest in employment generally does not create due process protection for such benefits.' "). Trudeau claims the sanction UNT ultimately imposed on him was ineligibility for a discretionary merit pay raise for a period of two years. Trudeau does not claim that he has a constitutionally protected property interest in a discretionary pay raise. Nor could he. *See, e.g., Vigor v. City of Saraland*, No.07-

0733-WS-M, 2008 WL 5225821, *9 (S.D. Ala. Dec. 11, 2008) ("Certainly, there has been no showing of any statute, regulation, ordinance, rule, contract or understanding that would carve out a property interest in a City of Saraland employee receiving his or her merit increase each year.").

Instead, he argues that he has a protected property interests in (1) UNT's adherence to procedures set forth in its policy manuals; (2) notice requirements contained in Section 51.942 of the Texas Education Code; (3) the availability of graduate student research assistants; and (4) miscellaneous benefits ancillary to his position as a tenured professor. His claims are without merit.

First, Trudeau argues that he has a constitutionally protected property interest in UNT's strict adherence to procedures set forth in its policy manuals. He appears to suggest that any alleged deviation from UNT procedures serves as both a deprivation of a property interest and evidence of constitutionally deficient process. Trudeau's theory thus collapses the two-part procedural due process inquiry. *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009) (the first part of the due-process inquiry is whether a liberty or property right was deprived; the second is whether the process afforded was constitutionally adequate). Counsel is unaware of any case holding that every procedure contained in university policy manual or faculty handbook can be elevated to constitutionally protected property interests. The general rule is just the opposite. *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992) (Texas state courts . . . uniformly embrace the notion that employee handbooks or

9

manuals, standing alone, 'constitute no more than general guidelines,' absent express reciprocal agreements addressing discharge protocols."). Trudeau was not discharged, and, in any event, he cites to no express agreement regarding the applicable procedure for an investigation into sexual misconduct.

Trudeau generally alleges that his 2006 contract incorporated the entirety of the "three-volume UNT Policy Manual and the Faculty Handbook" making all the procedures contained therein "binding on the University." (Dkt. 32 ¶¶25-28). Trudeau fails to quote specific language to support his claim, and a review of the documents he references establish that no such language exists.[2] The "binding on the University" language Trudeau quotes actually comes from a February 27, 2006 offer letter which read: "[n]o previous written or oral commitment will be binding on the University except as specified in this letter and attached information sheet." *See* Exhibit A. Notably, neither the offer letter nor the information sheet specifies that UNT will be bound by any particular procedure or policy. *See* Exhibit A; Exhibit B. Further, the offer letter explains that the information sheet was provided to make Trudeau aware of the policies and procedures that apply *to him*, and that any such policy or procedure may be revised by UNT:

> It is included to make you aware of selected University policies, procedures, and expectations that relate to new faculty. This information should help to facilitate your membership in the UNT

---

[2] "It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claims.'" *Carter v. Target Corp.*, 541 F. App'x 413, 416 (5th Cir. 2013) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

community. Please understand that the supplementary information is also subject to being revised or updated by the University in the future. Please note that the provisions appropriate for you will govern your appointment and future revisions or updates may apply to you as well.

Finally, Trudeau fails to mention that the offer letter was superseded by his actual August 28, 2006 contract, the terms of which also contain no express agreement by UNT to be bound by any procedure or policy. *Compare* Exhibit A (stating that Trudeau's appointment under the terms of the offer letter is assured "[u]ntil such time as the University sends formal contracts") *with* Exhibit C (Trudeau's 2006 contract). Trudeau had no protected property interest in the procedure for the investigation into the claims against him.

Trudeau's reliance on Section 51.942 of the Texas Education Code, commonly referred to as the post-tenure review statute, is also misplaced. That section applies to "Performance Evaluation of Tenured Faculty"—a process not at issue in this lawsuit. Tex. Educ. Code Ann. § 51.942. Trudeau misquotes the portion related to disciplinary action. (Dkt. 32 ¶29.) The statute provides that "before a faculty member may be subject to disciplinary action *on the basis of an evaluation conducted pursuant to this section*, notice of specific charges and an opportunity for hearing on those charges." Tex. Educ. Code Ann. § 51.942 (emphasis added on language Trudeau omitted). Because the process about which Trudeau complains was not part a performance evaluation pursuant to Section 51.942, that section does not advance his argument.

11

Nor can Trudeau claim a deprivation of a protected property interest based on graduate students not wanting to work with him. Defendants did not restrict Trudeau's access to graduate students and cannot be held responsible of the decisions of third-party students who preferred not to act as his assistant. Trudeau speculates about—but pleads no facts showing—the graduate students' motives. Nor does he allege facts showing that the allegations against him were "common knowledge in and among the College" as a result of Defendants' actions, as opposed to, for example, students warning other students about his behavior, or individuals who are not parties to this lawsuit disseminating information about his harassing conduct. Critically, Trudeau fails to identify a state law or contractual basis creating a property interest in the use of graduate students to assist with his research.

Finally, the Court has already considered and rejected Trudeau's claimed property interests associated with supposed "loss of significant income associated with projects and academic leadership positions and other benefits ancillary to his position as a tenured professor" as well as negative impacts from his teaching score. (Dkt. 31, p. 16). Trudeau pleads no new facts that would allow these concerns to be elevated to constitutionally protected property interests. Trudeau fails to state a claim for a violation of due process. The claim must be dismissed with prejudice.

**E.**     **Trudeau fails to state a claim to support a violation of equal protection.**

"The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'" *Wood v. Collier*,

836 F.3d 534, 538 (5th Cir. 2016) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). To establish an equal-protection claim, "the plaintiff must prove that similarly situated individuals were treated differently." *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). Trudeau complains of gender discrimination but fails to plead any facts to support that claim. *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (holding that conclusory allegations of differential treatment were insufficient to state a claim where the plaintiff "offer[ed] no specific factual support for his assertions"). "Absent allegations that other, similarly situated [professors] were treated differently, [Trudeau has] failed to plead a plausible equal protection claim." *Estate of Carmichael ex rel. Carmichael v. Galbraith*, No.3:11-CV-0622-D, 2012 WL 13568, *4 (N.D. Tex. Jan. 4, 2012), *aff'd*, 574 F. App'x. 286 (5th Cir. 2014).

The Court previously dismissed Trudeau's equal protection claim because he failed to allege facts showing disparate treatment among "similarly situated individuals." (Dkt. 31, p. 30) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009). Trudeau's Second Amended Complaint suffers the same infirmity. Trudeau continues to complain of unequal treatment *vis-à-vis* the students who accused him of wrongdoing. But the Court already found that allegation insufficient because those students are not similarly situated. *Id.* Trudeau fails to state a claim for a violation of equal protection. His claim must be dismissed with prejudice.

**F.     The Officials in their individual capacities maintain qualified immunity from Trudeau's constitutional claims.**

Qualified immunity ensures that government employees are not impeded from their public work to defend frivolous actions. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). Qualified immunity shields government officials conducting discretionary functions "from liability for civil damages insofar as their conduct does not [1] violate clearly established statutory or constitutional rights [2] of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, "[t]he qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.*

As set forth above, Trudeau fails to plead facially plausible violations of the due process and equal protection clauses of the Fourteenth Amendment. *Supra* Parts D-E. He can point to no violation of a constitutional right, let alone one that was clearly established at the time of the violation. The Officials sued in their individual capacities are thus entitled to qualified immunity. *See, e.g., Warner v. Wright,* 434 Fed. Appx. 333, 336 (5th Cir.2011) (per curiam) ("In light of the absence of evidence

of a constitutional violation, the defendants were entitled to qualified immunity from liability based on a due process violation." (citing *Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir.2009))). Even if Trudeau had pleaded plausible constitutional claims (he has not), there is certainly no "single 'controlling authority' nor a 'robust consensus of persuasive authority,'" *see Morgan v. Swanson,* 659 F.3d 359, 382 (5th Cir. 2011) (citation omitted), that would give the Officials an indication that the manner in which UNT conducted the Title IX investigation violated due process and equal protection. And Trudeau fails to adequately link, through specific factual averments, actions by the individual Officials to his alleged constitutional injuries. Instead he relies largely on vague claims that "UNT" perpetrated the unconstitutional actions. The Officials in their individual capacities are immune from Trudeau's constitutional claims. The claims must be dismissed with prejudice.

## V.   PRAYER

Defendants respectfully request that the Court grant their motion and dismiss Trudeau's claims with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

15

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief, General Litigation Division

*/s/ Matthew Bohuslav*
MATTHEW BOHUSLAV
Texas Bar No. 24069395
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: 512-463-2120
Fax: 512-320-0667
matthew.bohuslav@oag.texas.gov
***Attorneys for Defendant UNT, Eve Bell,
and Brian Richardson***


/s/ Rola Daaboul
ROLA DAABOUL
Texas Bar No. 24068473
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 936-1322
Fax: (512) 320-0667
rola.daaboul@oag.texas.gov
***Attorneys for Defendant Christina
Brodie***


## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically provided notice to all counsel of record.

*/s/ Matthew Bohuslav*
MATTHEW BOHUSLAV
Assistant Attorney General

16