**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JUSTIN TRUDEAU, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:19-CV-00723-RWS |
| | § | |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF NORTH TEXAS, et al; | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants University of North Texas ("UNT"), Eve Bell, Brian Richardson and Christina Brodie's (collectively, "Defendants"[1]) Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 33).  For the reasons set forth below, the motion is **GRANTED**, and Plaintiff Justin Trudeau's request for leave to replead or for limited discovery is **DENIED**.

## BACKGROUND

This case arises out of a sexual harassment investigation into statements Trudeau allegedly made while teaching a graduate-level performance art course at UNT, where he is a tenured professor.  The Second Amended Complaint alleges that the investigation initially claimed:

- On August 31, 2017, Trudeau told his students that "[n]o one gets through my class without getting naked."

---

[1] The Second Amended Complaint also adds David Holdeman and Steven Cobb as defendants in their individual and official capacities.  *See* Docket No. 32.  Defendants contest this joinder as belated and prejudicial.  Docket No. 33 at 4–5.  Because the Court dismisses the action with prejudice, as discussed below, and because the newly added defendants do not present unique issues, the Court need not reach the issue of misjoinder.

- During a performance adaptation, one student asked another to play the role of a mother. Trudeau then asked the first student if anyone else in the class was pregnant, and, when she responded no, he said "[i]t's still early in the semester."

- On September 7, while staging Cinderella, two female students volunteered to be the prince and princess in the performance.  During the kissing scene, the students froze, and Trudeau commented, "that scene was hot."

- During the same performance, Trudeau told a student that she had "fuck me eyes."

- The following week, during a performance about a cheating lover being poisoned, Trudeau said that the performance was "very erotic in every sense of the word."

- On September 28, a student was preparing for a performance wearing a yellow shirt cut into strips over a black top and jeans.  Trudeau commented "a real performer would just wear the yellow shirt."

- On October 30, during a rehearsal, two students informed a third that they were uncomfortable simulating sex on stage.  Trudeau told the director "you would be a genius if you could get your classmates to simulate sex during the performance."  He then jokingly told her that he would give her an "A" if the performers got naked.

- On November 2, Trudeau called one student a "psychopath" and another a "pervert."

*See* Docket No. 32 ¶ 6.05.  After sustaining several of the allegations, UNT sanctioned Trudeau by issuing a written reprimand, refusing him a merit raise and denying him summer teaching in 2019.  *Id.* ¶¶ 6.07, 6.33, 6.36.  Trudeau claims that the investigation denied him due process and equal protection in violation of the United States Constitution and that the adverse outcome of the investigation constitutes retaliation against him in violation of Title IX.  *See* Docket No. 31 at 6.

Defendants moved to dismiss Trudeau's original complaint.  *See* Docket No. 8.  After briefing on the motion had completed, but before the Court could hear argument, Trudeau amended his complaint.  Docket No. 18.  Defendants again moved to dismiss.  Docket No. 24.  The Court granted the motion, dismissing Trudeau's First Amendment and Title IX erroneous outcome claims with prejudice and allowing him to replead his Title IX retaliation, due process and equal protection claims.  Docket No. 31.  The Court found, in part, that: (1) Trudeau's retaliation claim was deficient because he had failed to include any allegations of a causal connection between his

participation in the Title IX investigation and its outcome; (2) Trudeau's due process claim failed because the First Amended Complaint did not allege any state law or contractual bases for Trudeau's alleged property interests; and (3) Trudeau had failed to state his equal protection claim because his allegations of disparate treatment were conclusory and because the female victims of Trudeau's alleged harassment were not similarly situated individuals.  *Id.* at 13, 16, 30.

Trudeau amended his complaint once again.  Docket No. 32.  Defendants move to dismiss that Second Amended Complaint, contending that Trudeau failed to rectify the First Amended Complaint's deficiencies.  Docket No. 33.

## APPLICABLE LAW

As a rule, a district court should resolve a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure before a defendant's other challenges because the court must assure itself that it has subject matter jurisdiction before it can determine any other issues.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  The party asserting jurisdiction (here, Trudeau) bears the burden of proving its existence.  *Id.*  Rule 12(b)(1) requires dismissal when the Court lacks the statutory or constitutional power to adjudicate the case.  *CLEANCOALITION v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008).  In deciding a Rule 12(b)(1) motion, a court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff.  *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents

attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The Court must then decide whether those facts state a claim that is plausible on its face.  *Bowlby*, 681 F.3d at 219.  The complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (applying *Twombly* to civil actions pleaded under Rule 8).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.     Sovereign Immunity

The Court previously dismissed Trudeau's constitutional claims against UNT and against Bell, Brodie and Richardson in their official capacities as barred by Eleventh Amendment sovereign immunity, finding that the *Ex parte Young* exception was inapplicable because Trudeau had not identified any ongoing violations of federal law.  Docket No. 31 at 9 (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Defendants submit that the Second Amended Complaint reasserts these constitutional challenges with the same defect.  Docket No. 33 at 6.  While Trudeau's response does not mention sovereign immunity, he does contend that he continues to be harmed by Defendants' actions.  Docket No. 34 at 11.  The Court interprets this argument as re-urging an *Ex parte Young* exception in response to Defendants' assertion of sovereign immunity.

At the motion hearing, Trudeau's counsel conceded that none of Defendants' actions are ongoing.  Because *Ex parte Young* requires an ongoing violation of federal law, it does not apply; continuing harm from a past violation is not enough.  *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 498 (N.D. Tex. 2015) (distinguishing between cases alleging harm from continued behavior, in which the *Ex parte Young* exception applies, and those alleging only continuing injury from a past discrete act, in which it does not); *Black Farmers & Agriculturists Ass'n, Inc. v. Hood*, Civil Action No. 3:13-CV-763, 2014 WL 935147, at *5 (S.D. Miss. Mar. 10, 2014) (finding that plaintiffs' allegation of continuing harm insufficient to allege ongoing violation of constitutional rights sufficient to satisfy *Ex parte Young*).  As with his First Amended Complaint, Trudeau's Second Amended Complaint does not contain factual allegations that overcome Defendants' assertion of sovereign immunity.  This is Trudeau's third failed attempt to state due process and equal protection claims against UNT and against Bell, Brodie and Richardson in their official capacities; those claims are **DISMISSED WITH PREJUDICE**.  *See United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (affirming district court's dismissal of complaint with prejudice where relator had two previous opportunities to cure pleading deficiencies).

## II.     Title IX Retaliation (Count I)

Defendants contend that the Second Amended Complaint, like the first, fails to allege a causal connection between Trudeau's participation in the Title IX investigation and its outcome.  Docket No. 33 at 7 (citing Docket No. 31 at 13–14).  They further argue that the allegations are inconsistent: in their view, if the outcome was predetermined, as Trudeau alleges, then his participation was irrelevant.  *Id.*  Finally, Defendants contend that Trudeau's retaliation claim is

simply a discrimination claim repackaged to account for the Court's dismissal of his erroneous outcome claim. *Id.* at 8.

To state his Title IX retaliation claim, Trudeau must show that "a causal connection exists between the protected activity and the adverse employment action." *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014)). Because Trudeau's retaliation claim is novel—he alleges that the retaliatory act is the outcome of the investigation in which he participated, Docket No. 32 ¶ 10—his participation and the adverse action are more closely related than in the typical Title IX context, where the adverse action is essentially disconnected from the protected activity. *See* Docket No. 31 at 13. By providing evidence in his own defense, Trudeau's participation logically could have impacted the outcome of the investigation for no reason other than by providing Defendants with a more fulsome record. *Cf.* Docket No. 34 at 6 ("For example, UNT used information Professor Trudeau provided, twisted it, and reached a conclusion based on the information Professor Trudeau provided."). Thus, to show that Defendants retaliated against him, Trudeau must allege more than that his participation affected the outcome in some way. Rather, Trudeau must plausibly allege that the investigation concluded the way that it did *because* he participated. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX" (emphasis original)). In other words, Trudeau must allege facts to allow the Court to reasonably infer that Defendants would not have sanctioned Trudeau if he had not participated or intentionally imposed a more onerous penalty because of his participation. The touchstone of the inquiry is whether Trudeau has plausibly alleged that Defendants engaged in activity that "constitutes intentional discrimination on the basis of sex, in

violation of Title IX."  *Id.*; *cf. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 365 (2013)

(Ginsberg, J., dissenting) (discussing majority's Title VII causation standard and observing that

"[t]he claim will fail unless the complainant shows 'but-for' causation, *i.e.*, that the employer

would not have taken the adverse employment action ***but for a design to retaliate***.").

Trudeau contends that the Second Amended Complaint is replete with factual allegations

that "yield a cause-and-effect inference."  Docket No. 34 at 2.  Specifically, Trudeau points to the

following allegations: (1) he was repeatedly dissuaded from defending himself, Docket No. 32 ¶¶

6.08, 6.18, 6.21, 6.32–35; (2) he was told that, as a "straight white male," he was not considered

to be engaged in a protected activity, did not have protected status and, therefore, could not pursue

any claims relating to the investigation, *id.* ¶¶ 6.18, 6.21; (3) UNT did not keep the investigation

confidential as required by its own policies, *id.* ¶¶ 6.22–25; (4) he was required to appeal to

Richardson, who was designated as the complainant against him, *id.* ¶ 6.40; and (5) he was treated

differently than his female students, *id.* ¶¶ 5.16–21, 15.

These allegations do not show that Defendants imposed a more onerous sanction on

Trudeau because he participated in the investigation.  They are, instead, self-defeating.  Trudeau

specifically alleges that, "[r]egardless of what [he] presented, or could present, UNT did not, and

would not, consider the evidence by him" and that "UNT's investigation did not consider any

evidence provided by Plaintiff."  Docket No. 32 ¶¶ 11, 12.  UNT's investigation was, in Trudeau's

view, "predetermined."  *Id.* ¶ 6.39.  Taken as a whole, Trudeau appears to allege in his Second

Amended Complaint that Defendants were out to get him, motivated by a desire to place the needs

of alleged female victims over those of the male accused and to pander to the #MeToo movement.

*See, e.g.*, *id.* ¶¶ 6.39, 6.41, 11–13, 15–17.  These allegations imply that Trudeau's participation

was irrelevant and had no impact on the outcome of the investigation; in other words, the Second

Amended Complaint crafts a narrative in which Trudeau's fate was sealed as soon as his students complained.  Such a claim is not cognizable under Title IX.  *See* Docket No. 31 at 11–12.

Trudeau's remaining arguments do not transform what is essentially an employment discrimination claim into a Title IX retaliation claim.  Trudeau first argues that Defendants tried to dissuade him from participating in the investigation by providing him with incorrect forms and incorrectly describing the appeals process.  Docket No. 34 at 3.  But receiving an incorrect form and incorrect information about an appeals process is not the same thing as being told not to defend oneself, nor do these allegations allow the Court to infer that Defendants tried to dissuade Trudeau from participating in the investigation.  There is certainly no indication that Defendants only resolved to punish Trudeau after their attempts at dissuasion failed.  What is more, Trudeau does not make any allegations demonstrating a discriminatory or retaliatory motive underlying Defendants' actions.  Trudeau next contends that a causal inference may be drawn from the fact that Defendants knew about his participation in the investigation.  Docket No. 34 at 4–5 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).  "But 'mere knowledge' is not sufficient alone to establish a prima facie case for retaliation," *Standley v. Rogers*, 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016), and mere knowledge is all that Trudeau has left.  Trudeau has failed to state a claim for Title IX retaliation despite three attempts, so his claim is **DISMISSED WITH PREJUDICE**.  *See Willard*, 336 F.3d at 387.

### III.     Violation of Due Process (Count II)

Defendants contend that the Second Amended Complaint continues to lack state law or contractual bases for Trudeau's alleged constitutionally protected property interests.  Docket No. 33 at 9 (citing Docket No. 31 at 16).  In Defendants' view, none of Trudeau's four alleged interests—UNT's adherence to procedures set forth in its policy manuals, notice requirements

contained in Section 51.942 of the Texas Education Code, the availability of graduate student research assistants and miscellaneous benefits ancillary to his position as a tenured professor—derive from state or contract law.

"To state a Fourteenth Amendment [procedural] due process claim under § 1983, [Trudeau] must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quotation and citation omitted). "[A] property interest falling under due process protections must be established by reference to some outside source—such as state law or contract." *Martin v. Memorial Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "[U]nless the state 'specifically creates a property interest in a noneconomic benefit—such as a work assignment—a property interest in employment generally does not create due process property protection for such benefits.' " *Davis v. Mann*, 882 F.2d 967, 973 n. 16 (5th Cir. 1989).

The Second Amended Complaint does not provide any new allegations that would allow the Court to infer that Trudeau has been deprived of a constitutionally protected property interest. Trudeau focuses exclusively on his employment contract and the property interests—adherence to policies and graduate student advisees—that he alleges arise therefrom, *see* Docket No. 34 at 7–9, which the Court interprets as conceding the point on the remaining interests. *Cf.* L.R. CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by the movant and has no evidence to offer in opposition to the motion."). "[W]here a property right to procedural protections existed under state law, those procedural guarantees constituted a property interest protected under due process." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 346 (5th Cir. 2006) (citing *Samuel v.*

*Holmes,* 138 F.3d 173, 177 (1998)) (abrogated on other grounds).   But under Texas law, unilaterally issued employment manuals, handbooks or policies do not constitute written contracts without an explicit agreement between the parties that the procedures described in the materials are binding.  *See, e.g., Hicks v. Baylor Univ. Med. Center,* 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ); *accord Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 871 (5th Cir. 2016).  Trudeau alleges that an August 28, 2006, offer letter binds the university to follow the policies and procedures set forth in the UNT Policy Manual and the Faculty Handbook. Docket No. 32 ¶¶ 25–27; Docket No. 34 at 7–8.  But the letter and attached information sheet— which Trudeau does not attach to the Second Amended Complaint and that Defendants attach to their motion to dismiss—do not expressly manifest an intent by UNT to be bound by any specific policies and procedures.  The offer letter states only that "the provisions [of the supplementary information sheet] appropriate for you will govern your appointment."  Docket No. 33-1 at 2.  The supplementary information sheet states that the "UNT Policy Manual and the Faculty Handbook are the official policies and procedures of the University of North Texas" and that the Handbook "is largely a summary of university organization, policy, procedures, and to an extent, tradition." Docket No. 33-2 at 1.  None of these statements represent an express agreement by UNT to be bound by the referenced policies and procedures.

Trudeau's reliance on the loss of graduate students affecting his ability to engage in scholarship is unavailing for the same reasons.  *See* Docket No. 34 at 8.  Trudeau bases his obligation to engage in scholarship on the same source: the faculty handbook.  *Id.*  But since the faculty handbook is not a contract, it cannot guarantee to Trudeau that he will serve as a graduate

advisor.  Once again, this amounts to no more than "a mere subjective 'expectancy,' " which procedural due process does not protect.  *Perry v. Sindermann*, 408 U.S. 593, 603 (1972).  The case upon which Trudeau relies, *Smock v. Board of Regents of the University of Michigan*, is distinguishable: there, the university prohibited Smock from serving as a doctoral student advisor as part of the official sanction against her, and fact questions remained on the nature of Smock's tenure contract.  353 F. Supp. 3d 651, 655, 657 (E.D. Mich. 2018).  Here, in contrast, Trudeau alleges only that graduate students independently decided not to work with him, *see* Docket No. 32 ¶ 6.28, and the Court has had an opportunity to examine the alleged contractual basis for Trudeau's property interest, which unambiguously does not bind Defendants.

Trudeau has failed to state his due process claim despite three attempts.  His claim is **DISMISSED WITH PREJUDICE**.  *See Willard*, 336 F.3d at 387.

## IV.    Violation of Equal Protection (Count III)

Defendants contend that the Second Amended Complaint, like its predecessor, fails to plausibly allege that Trudeau received treatment different from that received by similarly situated individuals.  Docket No. 33 at 13 (citing Docket No. 31 at 30).  At the motion hearing, Trudeau's counsel conceded that he had not sufficiently alleged any comparators and expressed a hope that he might locate some during discovery.  But "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.  Accordingly, Trudeau's equal protection claim is **DISMISSED WITH PREJUDICE**.  *See Willard*, 336 F.3d at 387.

## V.    Remaining Issues

The parties dispute other matters, such as Trudeau's addition in the Second Amended Complaint of two new parties and the applicability of qualified immunity.  *See, e.g.*, Docket No.

33 at 4–5, 14–15; Docket No. 34 at 10–12.  Because Trudeau does not state separate claims against the new defendants, and having found that all of Trudeau's claims are deficient, the Court need not reach these issues.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Docket No. 33) is **GRANTED**.  Trudeau's claims for violations of Title IX (Count I), due process (Count II) and equal protection (Count III) are **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 14th day of July, 2020.**


ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE