# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2021

Lyle W. Cayce
Clerk

No. 20-40532

JUSTIN TRUDEAU,

*Plaintiff—Appellant,*

*versus*

UNIVERSITY OF NORTH TEXAS, *By and Through its Board of Regents*;
EVE BELL, *in her Individual and Official Capacities*; BRIAN
RICHARDSON, *in his Individual and Official Capacities*; CHRISTINA
BRODIE, *in her Individual and Official Capacities*; DAVID HOLDEMAN,
*in his Individual and Official Capacities*; STEVEN COBB, *in his Individual
and Official Capacities*,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:14-cv-00723

Before KING, DENNIS, and HO, *Circuit Judges.*

PER CURIAM:*

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

Plaintiff-appellant Justin Trudeau was disciplined by his employer, defendant-appellee University of North Texas, following a Title IX investigation that substantiated allegations of sexual harassment. Trudeau filed suit against the university, alleging, in relevant part, violations of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and Title IX—claims which the district court dismissed with prejudice. Trudeau now appeals. We AFFIRM.

## I.

Justin Trudeau is a tenured associate professor at the University of North Texas ("UNT"), where he teaches graduate and undergraduate courses in the department of communication studies. In the Fall semester of 2017, Trudeau taught a graduate course, Seminar in Adaption and Staging. During this course, students were assigned a book titled *A Director Prepares*, the third chapter of which "referred to 'eroticism.'" In January 2018, after the class had concluded, Trudeau was made aware of an official investigation into his conduct in the class.

The allegations investigated included the following incidents that allegedly occurred over the course of the semester:

- Trudeau informed the class that "[n]o one gets through my class without getting naked."
- Trudeau asked a student director if anyone in the class was pregnant, and when she responded no, he stated "[i]t's still early in the semester."
- After a scene in which two female students kissed, Trudeau commented "that scene was hot."
- Trudeau informed a student during the staging of a play that she had "fuck me eyes."

- During a performance about a cheating lover being poisoned, Trudeau stated the performance was "very erotic in every sense of the word."
- When a student was preparing for a performance wearing a yellow shirt cut into strips over a black top and jeans, Trudeau stated that "a real performer would just wear the yellow shirt."
- During a rehearsal, two students informed the student director that they were uncomfortable simulating sex on stage. Trudeau told the director "you would be a genius if you could get your classmates to simulate sex during the performance" and joked that he would give her an "A" if the performers were nude.
- During a class, Trudeau called one student a "psychopath" and another a "pervert."

UNT sustained several of the allegations against Trudeau, finding that he had engaged in sexual harassment on multiple occasions in violation of UNT policy. Trudeau's punishment included a written reprimand, loss of merit pay as a result of low teaching scores for that semester, and ineligibility for summer teaching in 2019.

In October 2019, Trudeau brought suit against UNT, alleging retaliation under Title IX, denial of due process and equal protection under the Fourteenth Amendment, violation of the First Amendment, and breach of contract. Trudeau later amended his complaint, adding defendants Eve Bell, Christina Brodie, and Brian Richardson, and dropping his breach of contract claim. Following a motion to dismiss filed by defendants, the district court dismissed Trudeau's Title IX, due process, and equal protection claims without prejudice, and his First Amendment claim with prejudice. After Trudeau filed a second amended complaint, the district court dismissed his Title IX, due process, and equal protection claims with prejudice. Trudeau

now appeals the dismissal of his retaliation claim under Title IX[1] and his First Amendment and due process claims.[2]

## II.

We review de novo a dismissal under Rule 12(b)(6). *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). "To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Id.* (quoting *Taylor v. City of Shreveport*, 798 F.3d 276, 279 (5th Cir. 2015)).

## III.

### A. Retaliation Under Title IX

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The Supreme Court has held that the private right of action implied by Title IX includes claims of retaliation "where the funding recipient retaliates against an individual because he has complained about sex

---

[1] Trudeau also offered allegations that seemed to set forth an erroneous outcome claim under Title IX. This claim was considered and dismissed by the district court. Trudeau makes no mention of that aspect of his Title IX claim on appeal and thus forfeits that issue. *See Coleman v. United States*, 912 F.3d 824, 836 n.14 (5th Cir. 2019) (reaffirming that failure to adequately brief an issue on appeal constitutes forfeiture of that argument).

[2] Trudeau does not brief any argument relating to the dismissal of his equal protection claim. Nor does he address, beyond a single conclusory sentence, the district court's dismissal of his constitutional claims against UNT and against Bell, Brodie, and Richardson in their official capacities on the basis of sovereign immunity. Accordingly, these issues are forfeited. *See Coleman*, 912 F.3d at 836 n.14.

discrimination." *Id*. at 171.[3] To establish a *prima facie* case of retaliation under Title IX, a plaintiff must show that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)); *see also Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (per curiam) (citing the *Willis v. Cleco* Title VII retaliation standard for a Title IX claim because both statutes have similarly worded provisions and are afforded similar interpretation); *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1119 n.43 (5th Cir. 2021) (same).

This case turns on the third prong—the causal link between Trudeau's participation in the investigation and the adverse employment action. In the comparable context of Title VII retaliation claims, the Supreme Court has applied a but-for causation standard. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Accordingly, we consider whether Trudeau's participation was a but-for cause of his punishment. Trudeau cites a litany of allegations that he claims support such a causal link. In particular, Trudeau alleges that he was not able to "properly respond or otherwise defend himself" in the investigation; he was incorrectly told that as a "straight white male" he did not have a protected status and thus could not

---

[3] The parties debated below whether Trudeau, as the subject of the Title IX investigation rather than a complainant, could even bring such a retaliation claim. And there is reason to suspect that a respondent in a Title IX investigation does not fall under the umbrella of the implied right of action recognized by the Supreme Court in *Jackson*. *See Jackson*, 544 U.S. at 173 ("Retaliation against a person because that person has *complained of sex discrimination* is another form of intentional sex discrimination encompassed by Title IX's private cause of action.") (emphasis added). Trudeau maintains that his protected activity was his participation in the investigation. However, we need not consider the issue because Trudeau nonetheless fails to state a retaliation claim.

pursue claims relating to the investigation; he was given the wrong form for submitting a complaint; he was required to appeal to the same person who had been designated as the complainant; the university "desire[d] to advocate for the female students over men"; the university used information provided by Trudeau, "twisted it, and reached a conclusion based on the information . . . provided"; and the university failed to maintain the confidentiality required by its policies. Overall, Trudeau complains that the investigation was "predetermined, improper, deficient, and retaliatory."

These grievances with the investigation process do not add up to a claim of retaliation. Specifically, Trudeau has not plausibly alleged that the university punished him at the conclusion of the investigation *because* Trudeau participated in the investigation. For comparison, in another retaliation case similarly brought by the subject of a Title IX investigation rather than a complainant, the Seventh Circuit considered whether the plaintiff had alleged facts that indicated the university "came to its conclusion because it wanted to punish [the plaintiff] for defending himself at the proceeding." *Doe v. Columbia College Chi.*, 933 F.3d 849, 857 (7th Cir. 2019). The court found that he had not, concluding that the complaint demonstrated only that the university had "investigated the complaint, considered the evidence presented by [the plaintiff], and concluded that he committed some of the acts that [the student] alleged." *Id.* The same deficiencies sink Trudeau's retaliation claim here. Though Trudeau has identified alleged flaws in the investigation, he has not specified a causal link between his participation in the investigation and the punishment that resulted from it.

Trudeau attempts to salvage his pleadings by asking the court to infer causation based on the employer's knowledge of his protected activity.[4] We have indeed held that there must be evidence that "the decisionmakers had knowledge of his protected activity" and that, absent such awareness, it cannot be said that "the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 n.6 (5th Cir. 2003). However, even assuming *arguendo* that knowledge alone could be enough to infer causation on these facts, Trudeau fails to plausibly allege that UNT's "decision to [punish] was *based in part on* knowledge of [his] protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (emphasis added). This theory thus suffers from the same deficiencies discussed above.

Based on the foregoing, we affirm the district court's dismissal of Trudeau's Title IX retaliation claim.

## B. First Amendment Retaliation

To state a § 1983 claim for violation of the First Amendment right to free speech, employees of a public university must allege that "(1) they were disciplined or fired for speech that is a matter of public concern, and (2) their interest in the speech outweighed the university's interest in regulating the speech." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019).[5] The first

---

[4] Trudeau also argues for the first time on appeal that the close temporal proximity between his protected activity and the adverse employment action is alone enough to establish causation. As this argument was not raised before the district court, it is forfeited. *See United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017) ("Failure to raise a claim to the district court 'constitutes a forfeiture, not a waiver, of that right for the purposes of appeal.'") (quoting *United States v. Chavez-Valencia*, 116 F.3d 127, 130 (5th Cir. 1997)).

[5] These elements are drawn from the long-established *Pickering* test. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The district court below considered whether the Supreme Court's more recent opinion in *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006), which added the threshold question of whether a government employee's speech was made

No. 20-40532

element involves a question of law and "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). In particular, speech may involve a matter of public concern when it involves "an issue of social, political, or other interest to a community." *Id.* (quoting *Adams*, 640 F.3d at 564). By contrast, "[w]hen a public employee speaks in his capacity as an employee and on personal matters, rather than in his capacity as a citizen on a matter of public interest, his speech falls outside the protection of the First Amendment." *Id.* For example, in *Buchanan v. Alexander*, we held that an education professor's "use of profanity and discussion of her sex life and the sex lives of her students" did not involve a matter of public concern as it "was not related to the subject matter or purpose of training Pre-K–Third grade teachers." *Id.*

Trudeau fails plausibly to allege that his comments involved a matter of public concern. Trudeau's complaint states that a book assigned to his students, *A Director Prepares*, devoted a chapter to the subject of "eroticism"—among six other subjects covered—and he broadly alleges that he was required to "talk about [sensual, erotic, or sexual themes] in his role as a teacher." On appeal, he clarifies that the students' performances drew their themes from the course materials, which included the book, *A Director*

---

pursuant to his official duties, applies in the academic context. Indeed, some courts have declined to apply *Garcetti* in the "academic context of a public university." *Adams v. Trs. of the Univ. of N.C.–Wilmington*, 640 F.3d 550, 562 (4th Cir. 2011); *see also Demers v. Austin*, 746 F.3d 402, 412 (9th Cir. 2014) ("We conclude that *Garcetti* does not—indeed, consistent with the First Amendment, cannot—apply to teaching and academic writing that are performed 'pursuant to the official duties' of a teacher and professor."). However, under either the *Pickering* or *Garcetti* test, a public employee must have spoken on a matter of public concern, and, as we conclude that Trudeau did not, we need not consider which test to apply.

*Prepares.* However, neither the first nor the second amended complaint makes any effort to connect that single chapter on eroticism in a single book to the specific statements for which he was punished. Moreover, it is plain that the alleged comments relating to students' sex lives, encouraging nudity in class, and commenting on students' mental health, did not involve a matter of public concern. Put simply, Trudeau does not plausibly allege that any of these statements—made over the course of four months—was specifically "germane to the subject matter" or more generally involved "an issue of social, political, or other interest to a community." *Id.* at 853 & n.20 (first quoting *Adams*, 640 F.3d at 564; and then quoting *Bonnell v. Lorenzo*, 241 F.3d 800, 820 (6th Cir. 2001)). As a result, Trudeau's First Amendment claim fails.[6]

## C. Due Process Claim

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). While a tenured professor, such as Trudeau, has a protected property interest in his continued employment, "the due process clause does not protect . . . specific job duties or responsibilities absent a statute, rule, or express agreement reflecting an

---

[6] To the extent Trudeau argues on appeal that UNT's sexual harassment policy was unconstitutionally vague, that claim, set forth in his First Amended Complaint, fails. The First Amended Complaint contains only a single conclusory reference to the vagueness of the policy without any factual allegations—or even the text of the sexual harassment policy itself—that would support such a claim. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (quoting *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

understanding that he had a unique property interest in those duties or responsibilities." *Id.*; *see also Davis v. Mann*, 882 F.3d 967, 973 n.16 (5th Cir. 1989) ("[U]nless the state 'specifically creates a property interest in a noneconomic benefit—such as a particular work assignment—a property interest in employment generally does not create due process property protection for such benefits.'") (quoting *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 754 n.3 (5th Cir. 1986), *aff'd in part, vacated in part and remanded on other grounds*, 491 U.S. 701 (1989)). Put another way, Trudeau is "required to point to some state or local law, contract, or understanding that created a property interest." *Gentilello*, 627 F.3d at 545. We have thus stated clearly that "a university's failure to follow its own internal rules does not always establish to a due process violation." *Wigginton v. Jones*, 964 F.3d 329, 338 (5th Cir. 2020); *see also Martin v. Mem'l Hosp. at Gulfport*, 130 F.3d 1143, 1147 (5th Cir. 1997) ("[A] property interest falling under due process protections must be established by reference to some outside source—such as state law or contract.").

Trudeau complains that UNT violated his procedural due process rights by failing to adhere to its own policies and procedures during the Title IX investigation. In particular, Trudeau alleges that UNT prevented him from adequately responding to new charges, failed to give him adequate notice of the charges against him, caused him to forgo an appeal, failed to remove or replace an administrator with a conflict of interest, and took corrective action prior to the completion of the appeal. Trudeau cites a February 27, 2006 offer letter and accompanying information sheet as binding UNT to follow the policies and procedures set forth in its Policy Manual and Faculty Handbook.[7]

_____

[7] Specifically, Trudeau cites language in the offer letter stating that the letter and attached information sheet served "as assurance of this institution's commitment to your

No. 20-40532

"Texas law 'general[ly] reject[s] the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.'" *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991) (quoting *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir. 1987) (applying Texas law)). Moreover, this court has held that, "absent any express reciprocal agreement . . . [,] personnel policies or employee handbooks 'constitute no more than general guidelines and do not create contractual rights in employees.'" *Heggemeier v. Caldwell*, 826 F.3d 861, 871 (5th Cir. 2016) (quoting *Garcia v. Reeves Cnty.*, 32 F.3d 200, 203–04 (5th Cir. 1994)); *see also Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992) ("Texas state courts . . . uniformly embrace the notion that employee handbooks or manuals, standing alone, 'constitute no more than general guidelines,' absent express reciprocal agreements addressing discharge protocols.").

In this case, Trudeau fails to identify such an express reciprocal agreement in the 2006 letter or accompanying information sheet binding UNT to follow the policies in its employee manual or handbook. Accordingly, Trudeau has not identified a property interest, created by contract, in the procedural protections set out in the employee manual or handbook.[8]

---

appointment in accordance with the described terms" and that "[n]o previous written or oral commitment will be binding on the University except as specified in this letter and attached information sheet." In addition, the offer letter states that "the provisions [of the supplementary information sheet] appropriate for you will govern your appointment."

[8] Trudeau also claims that he suffered a due process deprivation as a result of graduate students refusing to associate with him. However, he attempts to analogize to a case in which the university prohibited a professor from serving as a student advisor as part of its official sanctions. *See Smock v. Bd. of Regents of the Univ. of Mich.*, 353 F. Supp. 3d 651, 655 (E.D. Mich. 2018). No such prohibition was included in the punishments levied by UNT. Moreover, at bottom, Trudeau has failed to allege a contractual right to that job duty.

No. 20-40532

## IV.

Based on the foregoing, we AFFIRM the district court's dismissal of Trudeau's Title IX, First Amendment, and due process claims.

---

*See Gentilello*, 627 F.3d at 544 ("[T]he due process clause does not protect . . . specific job duties or responsibilities absent a statute, rule, or express agreement reflecting an understanding that [the plaintiff] had a unique property interest in those duties or responsibilities.").